## EASTMAN and others vs. WHITE.

FORCIBLE ENTRY — COMPLAINT. — A complaint for forcible entry under R. S., ch. 117, sec. 2, need not specify or state the interest or estate of the complainant in the lands from which he has been expelled contrary to the statute. This statute prohibits one from doing himself right by force, and expelling by force one who is unlawfully in possession; and in case he does forcibly expel such wrongful occupant, he may under this act be compelled to restore him to possession, and be punished by fine for such forcible entry and expulsion.

(3 Chand., 196.)

ERROR to the County Court for *Iowa* County.

*Eastman and others* instituted a proceeding under the statute in relation to forcible entries and unlawful detainers against *White*, before a justice of the peace. The complaint alleged that the defendant "did on, etc., at, etc., with force and arms and a strong hand unlawfully, forcibly and injuriously enter into and upon" the premises in question, "then and there being in the peaceable possession of the complainants *as the lessees and tenants*, having lawful possession thereof, and that the said *White* then and there with force and arms and strong hands, unlawfully, forcibly and injuriously did expel, remove and put out the said complainants from the said premises; and the said complainants so as aforesaid expelled, removed and put out from the possession of said premises, with force and arms and strong hand did unlawfully, forcibly and injuriously keep out and still do keep out," etc. *White*, the defendant, moved that the complaint be dismissed on the ground that it set forth two distinct causes of action, and that it did not set out or show the kind or nature of the estate claimed by the complainants in the premises sought to be recovered; but the justice overruled the motion, and a verdict and judgment were had in favor of the complainants. The defendant appealed to the county court, and there renewed his motion to dismiss, and that court sustained it and dismissed the case on the ground that the complaint did not show any estate in the complainants which would authorize them to recover in the form of action which they had resorted to, and the complainants sued out this writ of error.

*S. Crawford*, for plaintiff in error:

1. The complaint does not set out two distinct causes of action. The word *unlawful* was properly used in connection with *forcible*, and is necessarily included in it; but if it were not, it may be rejected as surplusage. Gould Pl., 154; 6 Bac. Ab., 302; 1 Dall., 354.

2. The averment that the complainants were in the quiet and peaceable possession of the premises as tenants and lessees, hav-

ing a lawful possession, was a sufficient statement of their estate. A peaceable possession is evidence of seizin, and this is sufficient. *Jayne v. Price*, 5 Taunt., 326; 1 Marsh, 68; Bull, N. P., 103. A tenancy, whether for a year or any shorter period, is in law a term for years, and if it be even for a month, it is styled in law a term for years. 1 Cruise, 257; Comyns Land. and Ten., 5; 2 Black. Com., 140; *People v. Nelson*, 13 Johns., 340; *People v. Leonard*, 11 id., 504; *People v. Rickett*, 8 Cow., 226. And the averment is therefore tantamount to a statement of a term for years, because it necessarily showed that there was at the time a tenancy still existing and undetermined. The estate was set forth according to the facts, and want of form does not vitiate. R. S., ch. 117, § 20. The reason urged for an averment of the estate in the complaint, under the statute of 8 Hen. VI, does not apply to our statute. The English statute used the term *reseize*, which was construed technically, but our statute only requires a restitution or restoring.

3. A person having a peaceable possession, no matter by what right, who is forcibly ejected, has this remedy, the statute having been made to prevent persons violating the *possession* of others or doing right to themselves by force, and a recovery in this action in no way establishes a title in the complainants. 1 Scam., 496, 497; 2 Burns Ins., 260; Morris (Iowa), 111, 254; 4 Scam., 496.

*M. M. Cothren*, for defendant in error:

1. The complaint is bad for duplicity. R. S., ch. 117, § 2. And where more than one offense is charged in a complaint, it will be dismissed. *Commonwealth v. Symonds*, 2 Mass., 163.

2. The complaint does not set out the kind of estate claimed by complainants. It does not state who is the owner of the premises, of whom the complainants hold as tenants, nor for what time or on what terms. 3 Bac. Ab., 257; *Rex v. Wanhope*, Sayer, 142; *Rex v. Dorney*, 1 Ld. Raym., 610; 1 Salk., 260, 284, 290; *Regina v. Griffith*, 3 Salk., 169; *People v. Shaw*,

1 Caines, 125; *People v. King*, 2 id., 98; *People v. Nelson*, 13 Johns., 340; Pennington, R., 108–111; *State v. Pearson*, 2 N. H., 550; *Com. v. Dudley*, 10 Mass., 403; *Bracken v. Preston*, 1 Pinney, 584; *Burd v. Com.*, 6 Serg. & R., 252; 9 Wend., 50; 11 id., 157; 4 Yates, 225; *Cox v. Groshong*, 1 Pinney, 307.

HOWE, J. The principal question presented upon this record is, Whether the estate of the complainant is sufficiently described to bring it under the protection offered by our statute concerning forcible entries and unlawful detainers?

Upon the argument, the adjudications upon this question were supposed to be somewhat conflicting. But a little attention to the history of legislation upon the subject of forcible entries will suffice to reconcile all seeming conflict of authority upon the point here raised. It was first enacted by the 5 Rich. II, ch. 7, as follows: "And also the king defendeth that none from henceforth make any entry into any lands or tenements, but in case where entry is given by the law; and in such case not with strong hand, nor with multitude of people, but only in peaceable and easy manner. And if any man from henceforth do to the contrary, and thereof be duly convicted, he shall be punished by the imprisonment of his body, and thereof ransomed at the king's will."

Our statute, while it follows almost the exact phraseology of the above act, yet differs from it in this important particular, that it prohibits any entry upon "any lands, tenements or *other possessions*." But the act of 5 Rich. II provided no remedy for offenses against its provisions except by indictment. Accordingly, the act of 15 Rich. II, ch. 1, gave to justices of the peace jurisdiction to hear and determine complaints for forcible entries, and also for forcible detainers. Now, a very pertinent inquiry is, What was the rule of pleading as to the estate of the complainant under the statutes of 5 and 15 Rich. II? for it seems very clear that whatever averment was then sufficient, is now sufficient under the first section of the statute of this

state. R. S., ch. 117. The evidence upon this point is not entirely clear. Sergeant HAWKINS held this language upon the subject:

" It hath been also resolved, that an indictment on 5 or 15 Rich. II need not show who had the freehold at the time of the force, because those statutes seem *equally* to punish all force of this kind, *without any way regarding what estate the party had on whom it was made;* yet it seems that such an indictment ought to show that such an entry was made on the possession of some person who had *some estate in the tenements, either as a freeholder or lessee for years,* etc., for otherwise it doth not appear that such entry was made injurious to any one." Hawk. Pl. Cr., 504.

These two propositions are so utterly opposed to each other that all efforts to reconcile them must be hopeless. With one exception, the authorities referred to by the learned commentator in support of each proposition are different. One case is cited from the 2 Keb. Rep. in support of both propositions — a peculiarity not at all consistent with the general reputation of his reports. The only case cited in support of the first proposition, which I have been able to refer to is one reported in 1 Ventr., 23. The indictment is expressly declared to have been framed upon the 15 Rich. II, and it was objected to because the words were "*existens liberum tenementum,*" and not *adtunc existens,* etc. But the court held that although the words referred to the time of finding the indictment, and not the time of the entry, yet it was immaterial, because as no restitution was to be awarded, no mention need be made of whose freehold. More satisfactory evidence upon this point may be found by reference to the objects of those acts, as declared by all commentators thereon. " The indulgence of the common law in suffering persons to regain the lands they were unlawfully deprived of, having been found by experience to be very prejudicial to the public peace, by giving an opportunity to powerful men under the pretense of feigned titles, forcibly to

eject their weaker neighbors, and also by force to retain their wrongful possessions, it was thought necessary, by many severe laws, to restrain all persons from the use of such *violent methods of doing themselves justice.*" 1 Hawk. Pl. Cr., 595.

The purpose of these acts being then to prevent a party from doing justice by force, how is that purpose subserved if they be enforced only against those who do injustice by force, as he clearly does who deprives another of a freehold for a term of years? Most clearly those statutes had regard only to the public peace, and not to private rights; and accordingly, their only penalties were fine and imprisonment. They gave no redress to any party injured. That object was effected by the 8 Hen. VI, ch. 9. This latter statute again commanded the justices to execute the statutes against forcible entries and forcible detainers, and provided that if it be found " that any doth contrary to this statute, then the said justices or justice shall cause to reseize the lands and tenements so entered or holden, as aforesaid," etc. Upon this statute, HAWKINS remarks, that " it was a great question whether a lessee for years, or a copyholder, being ousted by the lessor or lord, could have a restitution of their possession within the equity of 8 Hen. VI, the words whereof as to their purpose are, that the justice shall reseize the lands, etc., by which it seems to be implied that the party must be ousted of such an estate therein, whereof he may said to be seized, which must be a freehold at least." 1 Hawk., 499.

From this statute unquestionably sprung the doctrine that the nature of the complainant's estate was an essential averment in the complaint for a forcible entry. All the cases cited in support of the doctrine were decided after that act took effect, and were evidently controlled by its provisions. It rested entirely upon the force of the word *seizin*, which was said to be used as a term of act. *Queen v. Griffith*, 3 Salk., 169. Accordingly, a lessee for years, if forcibly expelled by a stranger, might have his complaint under the 8 Henry VI, averring the

freehold to be in his lessor or lord, because the expulsion of the tenant was a disseizin of the lord. But not so if the tenant were expelled by his freeholder, even though the term was unexpired, because the freeholder could not disseize himself. 1 Hawk., 499; Yelv., 81. This idea never could, by any possibility, have originated from either of the statutes of Rich. II. But so undoubtedly, was the law from the 8 Henry VI, to 21 Jac., 1, when restitution was directed to be made to certain tenants therein described, and who might be forcibly expelled. But it was still necessary to set out what estate the person expelled had in the premises, because it was discovered that tenants at will were not named in the statute of 21 Jac., 1; *Rex v. Dorny*, 1 Salk., 260; *Rex v. Wanhope*, Sayre, 142; *Rex v. Bathurst*, id., 225. This was *casus omissus*, and in accordance with the strictness of ancient pleading, the complainant was obliged to show, by averment, that his was not the case omitted. How extremely critical was the construction put upon these statutes is evident from the following case which was held to be without their protection. If a lessor ejected his lessee for years, and was afterwards forcibly put out of possession by such lessee, he could have no restitution by complaint, because, as his lessee could not disseize him, he did not come under the provisions of the 8 Henry VI., and as he was not a tenant within the terms of the 21 Jac., 1, his case was not provided for by that act.

The statutes of 5 and 15 Rich. II, purposed to restrain men from doing themselves justice, by force, and from doing others injustice. They punished, as crimes, an entry upon lands without lawful right, and also a forcible entry, with lawful right. But whether the defendant entered *with* or *without* right, a judgment under those statutes left him still in possession. The subsequent statutes of 8 Hen. VI, and 21 Jac., 1, proposed to restore the party aggrieved to his rights, while they punished the force. But those statutes were directed against those only, who had entered *without lawful right and with force*. But

was all remedy gone, against those who entered forcibly, but with right, against the 5 Rich. II? I think not, though I express the opinion with great diffidence. Modern cases, in speaking of those statutes, have so invariably blended them together, that it is difficult to determine from the cases, what provisions of each were effective and what were not. But I express that opinion for these reasons : 1. Because I find nothing in either of the latter acts, necessarily repealing the act of 5 Rich. II. 2. Because in a case reported in 3 Salk., 169, it is said, that in cases of forcible entry and detainer, a man might proceed, either criminally or civilly ; his civil remedy is by writ of forcible entry, etc., and this is upon the statute of 8 Hen. VI. The case concludes with this language: "But if W. R. is seized, and L. R. having good right to enter, doth accordingly enter *manu forti*, he might be indicted, notwithstanding his right, and restitution shall be awarded." 3. Because I can see no reason why the penalties enacted against forcible entries, by the statute of 5 Rich. II, might not as well be enforced after, as before the 8 Hen. VI. But whether the latter statute suspended the former or not, it is clear, that under the 8 Hen. VI, restitution was awarded to such as had been forcibly expelled from a freehold, and *only* to such, because only *such* could have been disseized. It is equally clear that under the 21 Jac., 1, restitution was awarded to certain tenants therein named, and only to such, because only such were named. But under both acts the form of pleading and the rules of adjudication were based upon the terms of those acts respectively, and upon terms widely different from any to be found in the statutes of Rich. II. So in New York it was held that an indictment must set forth a seizin or possession, within the purview of the act, because the act to prevent forcible entries, etc., only extended to tenants for years, guardians and freeholders. *People v. Nelson*, 13 Johns., 340. But by the revised statutes of that state, the remedy is given to any one who has " an estate or freehold, or for term

of years, in the premises then subsisting, *or to some other right to the possession thereof.*" 2 R. S. N. Y., 508, sec. 3.

At first it seems to have been thought that this statute had rendered the nature of the estate wholly immaterial, and accordingly, it was held where the indictment averred possession in fee simple in the relator, and the proofs showed title in the defendant, that such averment might be rejected as surplusage. *People v. Van Nostrand*, 9 Wend., 50. But, in a subsequent case, Chief Justice SAVAGE, laying more stress upon the words " or some other right to the possession thereof," remarks that " a mere intruder or trespasser could not institute proceedings under this statute and be restored to the possession which he held unlawfully." Evidently, because such trespasser could show *no right* to the possession whatever. *People v. Reed*, 11 Wend., 157. But the 117th chapter of the revised statutes of this state, concerning forcible entries and unlawful detainers, contains none of the terms which controlled the decisions I have been noticing.

It awards " restitution " and not " reseizin," as did the 8 Hen. VI. There is, therefore, no reason for supposing it to be limited to estates of freehold. The remedy is not given by it, as by the 21 Jac., 1, and by the revised laws of New York, to *particular* tenancies, and therefore we have no reason for holding other tenancies to be excluded from its provisions. It does not, like the revised statutes of New York, require the complaint to be accompanied by an affidavit that the complainant has " an estate of freehold or for a term of years still subsisting, *or some other right to the possession thereof, stating the same;*" there is, therefore, no reason for limiting its protection to lawful possession. But, in terms as broad as the 5 Rich. II, it declares that no person, to whom entry is given by law, shall enter " with strong hand, nor with multitude of people, but only in a peaceable manner." Nor shall they make "any entry into lands, tenements or other premises, but in cases where entry is given by law." It directs, "when any complaint shall

be made in writing, to any justice of the peace, of any such *unlawful or forcible entry*," how the accused shall be brought into court, and how he shall be tried.

The 9th section declares that "if, upon the trial of any complaint under this chapter, the justice or jury shall find that the defendant or defendants, or either of them, are guilty of the *allegations in* the complaint" (either of an unlawful or forcible entry), "the justice shall thereupon enter judgment for the complainant to have restitution of the premises, and shall impose such fine, not exceeding one hundred dollars, considering all the circumstances as he may deem just," etc.

No such language is found in either of the statutes before noticed. I must deem it of controlling significance in the exposition of our act. By it, our act is broadly and advantageously distinguished from the former legislation upon the same subject in this: by the former statutes, the citizen was *commanded* not to do himself right by force; he was not disabled to do himself right by force. If in violation of the command, he acquired a right by violence, he was, at most, fined for the violence, but left in possession of the right thus acquired. Our statute utters the same command, and at the same time removes all inducement to violation, by depriving the party of all the fruits of his violation. It disables the citizen to do himself right by force, because it wrests from him whatever right he may have acquired by force.

Under this act, therefore, the nature of the complainant's estate is not a material averment where the entry complained of is with force and strong hand.

The judgment of the county court must be reversed and the cause remitted to the county of Iowa.